# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# Case No. 5:22-CV-00052-KDB-DSC

| | |
|---|---|
| **JOSEPH WILLIAM BAILEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **DARREN E. CAMPBELL in his** | ) |
| **individual capacity and official capacity** | ) |
| **as the Iredell County Sheriff and** | ) |
| **JOHN DOE 1-7 individually and in** | ) |
| **their official capacity as deputies of the** | ) |
| **Iredell County Sheriff's Office,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on the "Motion to Dismiss of Defendant Sheriff Darren E. Campbell Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" filed on June 20, 2022.

This Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration. Having fully considered the arguments, the record, and the applicable authorities, the undersigned respectfully recommends that the Motion be *granted in part* and *denied in part* as discussed below.

### I. Procedural and Factual Background

This is an action by Plaintiff Joseph Bailey against Iredell County Sheriff Darren Campbell and seven unidentified deputies (John Doe 1-7) in their respective official and individual capacities. It arises from an incident at the Iredell County Detention Center on March

1

27, 2019. Pursuant to 42 U.S.C. § 1983, Plaintiff seeks to recover damages resulting from alleged violations of his Fourth Amendment right to be free from unreasonable seizures and his Fourteenth Amendment Due Process rights. He also brings various state law negligence and intentional tort claims.

Accepting the factual allegations of the Complaint as true, in the early morning hours of March 27, 2019, Plaintiff was arrested by officers of the Mooresville Police Department on suspicion that he had failed to pay a bar tab. He was subsequently delivered into the custody of Defendants Doe 1-7 at the Iredell County Jail, where he suffered serious physical and emotional injuries resulting from their use of excessive force against him.

After being "violently" dragged out of a holding cell, Plaintiff was shoved into an unmonitored room by Defendants Doe 1-7—a room they chose specifically because they knew there was no camera inside and wanted to avoid being recorded. Approximately three minutes later, Defendants Doe 1-7 pulled him out of the unmonitored room. He was wearing different jail issued clothes and was "bleeding profusely from a head wound" that had not been present before he entered the room. After being briefly pushed back into the unmonitored room, he re-emerged "visibly injured and shaken." Despite not having resisted or acted aggressively toward the officers, Plaintiff was "roughly strapped to a chair" in the central holding area of the jail with his chest, hands, and feet restrained. The wound on his head was then cleaned and blood was mopped up from the floor around him. He remained in the chair for nearly two hours with no medical attention. He was released from the Sheriff's custody "within hours of his arrest."

In the days following his release from the Iredell County Jail, Plaintiff was diagnosed with a concussion, post-concussive syndrome, and Syncope—a condition consistent with head injuries and/or a temporary loss of consciousness. He was compliant at all times while in custody

2

and suffered compensable physical and emotional injuries as a result of Defendant Doe 1-7s' "objectively unreasonable and shocking use of excessive force."

On March 25, 2022, Plaintiff filed the instant lawsuit in Iredell County Superior Court asserting the following claims:

(1) A federal claim pursuant to 42 U.S.C. § 1983 against Sheriff Campbell and John Doe 1-7 in their respective official and individual capacities.

(2) A North Carolina common law tort claim for "negligence/gross negligence" against Sheriff Campbell and John Doe 1-7 in their respective official and individual capacities.

(3) A North Carolina common law tort claim for "negligent hiring, negligent supervision, negligent retention, and gross negligence" against Sheriff Campbell in his official and individual capacities.

(4) A North Carolina common law tort claim for "assault and battery" against Sheriff Campbell and John Doe 1-7 in their respective official and individual capacities.

(5) A North Carolina common law tort claim for "intentional/reckless infliction of emotional distress" against Sheriff Campbell and John Doe 1-7 in their respective official and individual capacities.

(6) A North Carolina common law tort claim for "negligent infliction of emotional distress" against Sheriff Campbell and John Doe 1-7 in their respective official and individual capacities.

On May 2, 2022, Sheriff Campbell removed the matter to this Court. On June 20, 2022, he filed the instant Motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss:

(1) Plaintiff's Section 1983 claim against Sheriff Campbell in both his individual and official capacities;

(2) Plaintiff's state law tort claims against Sheriff Campbell in his official capacity for negligent hiring/retention/supervision, negligent infliction of emotional distress, and punitive damages;[1] and

---

[1] Plaintiff's claim for punitive damages was voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure on July 22, 2022.

> (3) All of Plaintiff's state law tort claims against Sheriff Campbell in his individual capacity.

## II. Analysis

**A. Standard of Review**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th. Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In *Iqbal*, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Thus, while the court may accept factual allegations in the complaint as true and considers those facts in the light most favorable to the plaintiff, "conclusory" allegations, "naked assertions," and "formulaic recitations" of the elements of a cause of action should be disregarded when ruling on a motion to dismiss. *Twombly*, 550 U.S. at 555-57. A court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.V. Assocs*, LP, 213 F.3d 175, 180 (4th Cir. 2000).

Next, the court determines whether the remaining well-pleaded facts make out a plausible claim—in other words, whether the factual allegations are "enough to raise a right of belief

above the speculative level on the assumption that all the [well-pleaded factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. This is because in order for a plaintiff to withstand a motion to dismiss, the Complaint must contain "enough factual matter" to make out a claim that is "plausible." *Id*. at 556. This plausibility inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and should therefore be dismissed. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 228 (4th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Neitzke*, 490 U.S. at 328; *see Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.*, 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

**B. The Motion to Dismiss the 42 U.S.C. § 1983 claim against Sheriff Campbell in both his official and individual capacities should be granted.**

### 1. Official Capacity Claim

Plaintiff's Section 1983 official capacity claim against Sheriff Campbell appears to be premised on: (1) a *respondeat superior* theory, and (2) a *Monell* theory based upon the allegation

5

that he "failed to implement adequate policies with respect to the proper use and application of physical force, de-escalation, treatment of individuals in custody at the Iredell County Jail, and requiring all rooms of the Iredell County Jail to be monitored by video cameras," as well as the allegation that he "further failed to adequately train and instruct deputies such as Defendants Doe 1-7 in the proper use and application of physical force, de-escalation, and treatment of individuals in custody at the Iredell County Jail."

Plaintiff's vicarious liability claim fails. It is well-established law that Section 1983 liability cannot be predicated on a theory of *respondeat superior*. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Given this well-established precedent, the undersigned respectfully recommends that Sheriff Campbell's Motion to Dismiss the Section 1983 claim be granted insofar as that claim rests on a *respondeat superior* theory.

With respect to Plaintiff's *Monell* theory of liability, a municipality may be liable under 42 U.S.C. § 1983 if one of its "policies" or "customs" caused a deprivation of the plaintiff's constitutional rights. *Monell,* 436 U.S. at 694. Such a policy or custom can arise: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers…; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *see also A.G. v. Fattaleh*, 2022 WL 2758607 (W.D.N.C. 2022).

With respect to failure to train claims, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its

6

Case 5:22-cv-00052-KDB-SCR    Document 14    Filed 09/26/22    Page 6 of 15

inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff must sufficiently allege that "through its *deliberate* conduct, a municipality was the "moving force" behind the alleged injury. In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). The plaintiff must allege that (1) a policy (2) caused (3) the deprivation.

Sheriff Campbell first argues that Plaintiff's *Monell* claim should fail because the allegations of a failure "to implement adequate policies with respect to the proper use and application of physical force, de-escalation, treatment of individuals in custody at the Iredell County Jail, and requiring all rooms of the Iredell County Jail to be monitored by video cameras," amount to no more than negligence, which is not actionable under Section 1983. *See, e.g. Daniels v. Williams*, 474 U.S. 327, 335-36 n.3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995).

Plaintiff disputes Sheriff Campbell's assertion that nothing more than negligence has been shown. He argues that the very fact of the "brutal beating and failure to secure medical treatment . . . by at least seven deputies" in itself demonstrates a failure to train them on the proper use of force and treatment of detainees (document #11). He further argues that "[a] local governing body's failure to adequately train . . . can be so egregious as to warrant a finding that it amounts to a policy or custom for which the municipality should be held responsible." *Hall v. Burney*, 454 Fed. App'x 149, 151 (4th Cir. 2011). But Plaintiff has not alleged that any inadequate training in this situation amounted to a policy. Instead, he simply alleges that the

7

Sheriff's policies and training were "inadequate," and that "[d]efendants' acts and omissions violated Plaintiff's constitutional rights under 42 U.S.C. § 1983." Thus, while Plaintiff has clearly alleged causation and deprivation of a constitutional right, he has not sufficiently alleged that the inadequacy of training amounts to a "policy," in order to state a valid *Monell* claim.

Sheriff Campbell next argues that Plaintiff's *Monell* claim should fail because it does not satisfy the pleading requirements set forth in *Iqbal* and *Twombly*. He characterizes the allegations regarding policies and training as formulaic legal conclusions supported by "naked assertions devoid of any factual enhancement" that are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Plaintiff does not allege what Sheriff Campbell's policies were with respect to the proper use of force, de-escalation, or treatment of individuals in custody at the jail. Nor does he describe the ways in which those policies were inadequate, or allege that the purported acts of John Doe 1-7 were taken pursuant to those policies.

Failure to train claims require a plaintiff to plead and prove specific deficiencies, and "general laxness or ineffectiveness in training is not enough." *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). *See also Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010); *Nicholson v. Baltimore Police Dep't*, 2021 WL 1541667 (D.Md. 2021) (unpublished) ("Plaintiff does not allege any factual details about the sort of training that BPD officers actually receive. His references to generalized deficiencies within the department do not sufficiently flesh out his allegations."); (*Ross v. Prince George's Cty*., 2012 WL 1204087, at *9 (D.Md. 2012) (unpublished) (dismissing allegations which merely "state[d] in conclusory terms that the County failed 'to adequately train and supervise officers in the proper use of force'"); *Jackson v. Brickey*, 771 F. Supp.2d 593, 604 (W.D. Va. 2011); *Miller v. Hamm*, 2011 WL 9185, at *12 (D.Md. 2011) (unpublished). Plaintiff must also plausibly allege that the inadequate training

8

made the occurrence of the specific violation "almost bound to happen," not just "likely to happen." *Spell*, 824 F.2d at 1390 (internal quotation marks omitted).

Numerous courts, including this one, have dismissed Section 1983 municipal liability claims at the Rule 12(b)(6) stage that are premised upon nothing more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555. In *Clemons v. Greensboro*, 2020 WL 2850981 (W.D.N.C. 2020) (unpublished), the Court held:

> "Plaintiff has not plausibly alleged a claim with respect to any of these four theories of municipal liability. Though Plaintiff's Complaint includes many factual allegations regarding the officers' conduct, Plaintiff's § 1983 claim against Greensboro consists of four conclusory statements unsupported by factual allegations . . . [p]laintiff states:
>
> [Greensboro], upon information and belief, permitted and tolerated a pattern and practice of unreasonable use of force and intimidation, punishment and deprivation of Constitutional guarantees by its police officers.
>
> [Greensboro], through its policy-makers, engaged in hiring policies that put into place officers that were not properly trained. If proper hiring policies had been in effect, the police department would not have hired the employees that violated Plaintiff's rights.
>
> [Greensboro] failed to properly train its officers thereby demonstrating the deliberate indifference of its policy makers to the conduct that resulted in the violation of the Plaintiff's rights.
>
> [Greensboro] maintained a system of review of police conduct through its departments that is so cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force, planting of evidence, abusive practices, punishment and denial of constitutional rights by police officers.
>
> As the Court recently explained in *White v. City of Greensboro,"* such conclusions of law are not assumed to be true on a motion to dismiss and, without further factual support, fail to state a plausible *Monell* claim for municipal liability."

*Clemons*, 2020 WL 2850981, *2.

The conclusory allegations that the Court found legally insufficient to raise a valid claim in *Clemons* are very similar to, if not more than those set forth by Plaintiff in his Complaint here.

9

Plaintiff's allegations regarding the inadequacy of Sheriff Campbell's use of force policies and training simply assert a "general laxness or ineffectiveness in training," which is insufficient to state a valid claim. The undersigned respectfully recommends that Sheriff Campbell's Motion to Dismiss the Section 1983 official capacity claim also be granted insofar as it rests on theories of failure to train and supervise.

### 2. Individual Capacity Claim

To hold an individual liable under Section 1983, a plaintiff must show that "the official acted personally in the deprivation of plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Plaintiff does not allege that Sheriff Campbell was present during the incident in question or that he had any personal knowledge of, or participation in, any purported violation of Plaintiff's rights. Consequently, Sheriff Campbell's Motion to Dismiss Plaintiff's Section 1983 individual capacity claim should be granted.

## C. The Motion to Dismiss All Negligence Claims (Other Than Negligent Infliction of Emotional Distress) Against Sheriff Campbell in his Official Capacity Should be Granted.

### 1. Official Capacity Claim

To support a claim for negligent hiring, retention, and supervision against an employer, a plaintiff must allege: "(1) the specific negligent act on which the action is founded ...(2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in 'oversight and supervision,' ...; and (4) that the injury complained of resulted from the incompetency proved." *Moricle v. Pilkington*, 120 N.C. App. 383, 386 (1995).

Sheriff Campbell argues that these allegations regarding failure to train, monitor, and supervise Defendants Doe 1-7 fail because they do not contain sufficient facts to satisfy the

10

requirement that he knew or had reason to know of his deputies' incompetence prior to the incident on March 27, 2019. Further, Sheriff Campbell argues that the allegations fail to meet the pleading requirements set forth in *Iqbal* and *Twombly* because they amount to conclusory statements without supporting factual allegations.

Plaintiff asserts that if Sheriff Campbell had used ordinary care in overseeing his deputies, "he should have recognized that they had access to an unmonitored room where they could – indeed, did – conduct unwarranted beatings of peaceable inmates." Additionally, the fact that at least seven deputies participated in the alleged assault shows a "widespread belief that such conduct was reasonable and acceptable to Sheriff Campbell" (document #11). But Plaintiff does not make any allegations about conduct occurring *prior* to the incident at issue that would have put Sheriff Campbell on notice about his deputies' purported incompetence. Thus, on the face of the Complaint, the only knowledge Sheriff Campbell could have had of Defendants Doe 1-7s' unfitness was from this incident. Because Plaintiff has not stated a *prima facie* case for negligent/grossly negligent hiring, supervision, and retention, the undersigned respectfully recommends that Sheriff Campbell's Motion to Dismiss this claim against him in his official capacity be granted.

**2. Individual Capacity Claim**

Plaintiff cannot assert claims for negligent hiring, supervision, and retention against Sheriff Campbell in his individual capacity. Hiring and supervising amount to acts the Sheriff could only perform in his official capacity. The undersigned respectfully recommends that

Sheriff Campbell's Motion to Dismiss this claim against him in his individual capacity be granted.

**D. The Motion to Dismiss the Negligent Infliction of Emotional Distress Claim Against Sheriff Campbell in his Official Capacity Should be Denied.**

To state a claim for negligent infliction of emotional distress, a plaintiff must allege "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990).

Plaintiff alleges that Defendants Doe 1-7 and Sheriff Campbell engaged in negligent conduct in their mistreatment of Plaintiff, failure to implement policies and procedures requiring rooms to be monitored, and failure to properly train Defendants Doe 1-7. He further alleges that it was foreseeable that their negligent conduct would cause Plaintiff severe emotional distress, and that the actions did in fact cause severe emotional distress.

Sheriff Campbell argues that the claim for negligent infliction of emotional distress against him fails as a matter of law, because the alleged acts are the same as alleged in the claim for intentional infliction of emotional distress (document #8). He cites *Eubanks v. State Farm Fire and Casualty Co.*, 126 N.C. App. 483, 485 (1997), where the court held that a plaintiff could not assert a claim for negligent infliction of emotional distress in the alternative to a claim for intentional infliction of emotional distress when the plaintiff fails to allege any new facts apart from those supporting the claim for intentional infliction); *See also Mitchell v. Lydall*, Inc., 1994 WL 38703, *3 (4th Cir.1994) (unpublished) (A claim for negligent infliction of emotional distress is subject to dismissal when "the material factual allegations charge nothing but intentional acts . . .").

12

Case 5:22-cv-00052-KDB-SCR    Document 14    Filed 09/26/22    Page 12 of 15

As in *Eubanks*, Plaintiff here asserts a negligence claim that arises out of the same set of facts as the intentional infliction of emotional distress allegations. But Plaintiff does allege the three elements of negligent infliction of emotional distress.

Additionally, a sheriff may be held liable in his official capacity for the acts or omissions of his deputies. *See Styers v. Forsyth County*, 212 N.C. 558 (1937) ("The acts of the deputy are the acts of the sheriff. For this reason, the sheriff is held liable on his official bond for acts of his deputy.") Because Plaintiff has alleged a negligent infliction of emotional distress claim sufficient to survive Sheriff Campbell's Motion to Dismiss, the undersigned respectfully recommends that the Motion be denied.

**E. The Motion to Dismiss the State Law Tort Claims Against Sheriff Campbell in His Individual Capacity Should be Granted.**

Under the doctrine of public official immunity, an officer who is engaged in the exercise of governmental duties involving the exercise of judgment and discretion may not be held liable for negligence in the performance or non-performance of those duties but may only be held liable if his actions were "corrupt or malicious." *See e.g., Smith v. Hefner,* 235 N.C. 1, 7, (1952). An officer is protected by immunity if he acts recklessly, or if his judgment is misguided, so long as he acts without malice or corruption. *See, e.g.*, *Grad v. Kaasa*, 312 N.C. 310, 321 (1984); *EEE-ZZZ Lay Drain v. N.C. Dept. of Human Resources*, 108 N.C. App. 24, 28 (1992); *Miller v. Jones*, 224 N.C. 783 (1945).

In *Grad*, the North Carolina Supreme Court articulated the two-pronged test that a plaintiff must meet to demonstrate "malice" sufficient to defeat public official immunity. A plaintiff must show: (1) that the officer wantonly did that which a man of reasonable intelligence would know to be contrary to his duty; and (2) that the officer intended his act to prejudice or injure the plaintiff.

Sheriff Campbell argues that Plaintiff makes no allegations in his Complaint that he acted in a manner that was malicious, corrupt, or outside the scope of his official duties sufficient to pierce his entitlement to public official immunity.

Plaintiff argues that "Sheriff Campbell's conduct – in failing to require rooms to be monitored and failing to properly train his deputies on the proper use of force and provisions of medical treatment – was such that "a man of reasonable intelligence would know [it] to be contrary to his duty and manifestly indifferent to the consequences risking life or serious bodily injury" (document #11). Plaintiff does not cite any authorities in support of his contention that these alleged shortcomings rise to the level of malicious conduct or provide substantive factual allegations to support them. Additionally, North Carolina law does not support individual liability claims against a Sheriff on the basis of *respondeat superior*. *See, e.g.*, *Styers v. Forsyth County*, 212 N.C. 558 (1937). In light of the foregoing, Plaintiff's allegations are insufficient to pierce Sheriff Campbell's entitlement to public official immunity as to the claims against him in his individual capacity. The undersigned respectfully recommends that the Motion to Dismiss the state law tort claims against Sheriff Campbell in his individual capacity be granted.

### III. Recommendation

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that the "Motion to Dismiss of Defendant Sheriff Darren E. Campbell Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" be **GRANTED IN PART** and **DENIED IN PART**; that is, **GRANTED** as to the 42 U.S.C. § 1983 official and individual capacity claims, the official capacity negligent/grossly negligent hiring/supervision/retention claim, and all individual

14

capacity state law tort claims; and **DENIED** as to the negligent infliction of emotional distress claim against Sheriff Campbell in his official capacity.

### IV. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. *Diamond v. Colonial Life*, 416 F.3d 310, 315–16 (4th Cir. 2005); *Wells v. Shriners Hosp.*, 109 F.3d 198, 201 (4th Cir. 1997); *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 147 (1985); *Diamond*, 416 F.3d at 316; *Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003); *Wells*, 109 F.3d at 201; *Wright v. Collins*, 766 F.2d 841, 845–46 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO ORDERED.**  Signed: September 26, 2022

David S. Cayer
United States Magistrate Judge