IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00052-KDB-SCR

| | |
|---|---|
| JOSEPH WILLIAM BAILEY,<br><br>    **Plaintiff,**<br><br>v.<br><br>DARREN E. CAMPBELL,<br>ZACHARY WOOD,<br>BRIAN FLETCHER,<br>SHAWN D. SAVAGE JR.,<br>MICHAEL PAYNE,<br>CHARLES P. MCCLURE, AND<br>ADAM PIKE,<br><br>    **Defendants.** | **ORDER** |

    **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 34). The claims in this case arise out of an alleged assault on Plaintiff Joseph W. Bailey by Defendant law enforcement officers Brian Fletcher, Shawn D. Savage Jr., Michael Payne, Charles P. McClure, and Adam Pike in the Iredell County (N.C.) jail after Bailey's arrest for allegedly failing to pay a bar tab. The Defendants[1] move to dismiss on the grounds of qualified immunity, public official immunity, and the statute of limitations. *See* Doc. No. 35. The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion.

---

[1] The use of "Defendants" in this motion applies only to those named above. Defendant Darren E. Campbell, although represented by the same lawyer as the moving Defendants, is not party to this motion and instead filed an Answer. *See* Doc. Nos. 31, 34.

1

# I. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court, for the purposes of a Rule 12(b)(6) motion, takes all factual allegations as true.[2] *See Ashcroft*, 556 U.S. at 678. However, a claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted).

---

[2] When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).

2

In sum, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

In the early hours of March 27, 2019, Plaintiff was arrested by members of the Mooresville Police Department and delivered to Iredell County Jail on suspicion that he had failed to pay a bar tab of less than $300. *See* Doc. No. 29 at ¶¶ 16-17. Following his arrest, Plaintiff was placed in a holding cell with other individuals. *Id.* at ¶ 20. At some point after being placed in the holding cell, Plaintiff asserts "six (6) uniformed deputies wearing plastic gloves were waiting for Plaintiff outside of the holding cell. Plaintiff was grabbed by at least three (3) deputies, one gripping him by the back of his neck and two others cuffing his hands behind his back." *Id.* at ¶ 21. He was then shoved into a room without video monitoring by and with the Defendants. *Id.* at ¶ 23. Approximately three minutes later, Plaintiff emerged with his arms held behind his back, blood pouring from a new head wound, and wearing a different Sheriff-issued garment than when he went into the room. *Id.* at ¶ 24. Standing in the hallway of the Iredell County Jail, dazed and bleeding, Plaintiff pleaded with the Defendants to explain why they assaulted him. *Id.* at ¶ 25. Defendants then pushed Plaintiff back into the unmonitored room. *Id.* at ¶ 26. When he re-emerged, he was wearing his original Sheriff-issued clothing. *Id.*

Plaintiff claims that Defendants then strapped him to a chair in a central area of Iredell County Jail while his head was cleaned and his blood mopped up off the floor around him. *Id.* at ¶¶ 27-29. He stayed in this condition, without any further medical attention, for nearly two hours before being returned to the holding cell. *Id.* at ¶ 30. Plaintiff repeatedly asserts that he was compliant with the Defendants demands while in their custody, did not resist, and in no way posed

3

a physical threat to any of the Defendants. *Id.* at ¶¶ 22, 28, 38-39, 44. He was released from custody later that day. *Id.* at ¶ 34.

As a result of the alleged assault and the Defendants failure to provide medical care for his resulting injuries, Plaintiff was diagnosed with a concussion by multiple medical providers in addition to post-concussive syndrome and syncope, which are consistent with head injuries and/or temporary loss of consciousness. *Id.* at ¶¶ 35-37.

Plaintiff filed this action, alleging violations of 42 U.S.C. § 1983 ("Section 1983) and North Carolina law, on March 25, 2022. Doc. No. 1-2. His initial Complaint named Sheriff Darren E. Campbell and John Does 1-7 "as deputies of the Iredell County Sheriff's Office" as defendants. *Id.* Following an initial motion to dismiss and associated Order from this Court, Plaintiff filed an Amended Complaint on June 15, 2023, renewing his claims against Sheriff Campbell and substituting John Does 1-7 with Defendants Zachary Wood, Shawn D. Savage, Jr, Charles P. McClure, Adam Pike, Brian Fletcher and Michael Payne (collectively, the Defendants). *See* Doc. No. 29. Defendants filed the instant Motion to Dismiss in July 2023. The motion is fully briefed and ripe for the Court's review.

### III.  DISCUSSION

Defendants argue that the Court should grant their motion to dismiss because (1) the Section 1983 claim is insufficiently pled and so is barred by qualified immunity, (2) the state law claims are barred by public official immunity, (3) the state law claim for punitive damages fails as a matter of law, and (4) the statute of limitations expired before Plaintiff brought the named "John Doe" Defendants into the case with the Amended Complaint.[3]

---

[3] Defendants also sought dismissal of the claims against them in their official capacities on the grounds that they were duplicative because the Sheriff of Iredell County has been sued in his

4

## A. The Section 1983 Claims

While not a source of substantive rights, Section 1983 provides a vehicle to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, Section 1983 provides potential relief for a plaintiff who can prove that a person acting under color of state law deprived him of a right secured by federal law, including violations of federal constitutional rights, as well as certain limited federal statutory rights. *See Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir.) (2022); *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 580 (4th Cir. 2017).

However, qualified immunity "shields Government officials 'from liability for [Section 1983] civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). To overcome this immunity, Bailey must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Jones v. Solomon*, 90 F.4th 198, 207 (4th Cir. 2024) (citing *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019)). The Defendants are "entitled to qualified immunity if either prong is not satisfied." *Id.*

Defendants argue that Plaintiff failed to satisfy the first prong because he did not allege with sufficient specificity how each Defendant violated Plaintiff's constitutional rights. *See* Doc.

---

official capacity. However, because that was addressed by a joint stipulation of partial dismissal, the Court need not analyze it here. *See* Doc. No. 36.

5

No. 35 at 10-11. In Section 1983 cases, a government official is "only liable for his or her own misconduct," *Ashcroft*, 556 U.S. at 677, and so courts are "critical of complaints that fail to isolate the allegedly unconstitutional acts of each defendant" or "make only categorical references to 'Defendants,'" *Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (alterations adopted) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012)). However, "group pleading" is not *per se* grounds for dismissal. The Fourth Circuit has held that "the use of 'John Doe' or 'Jane Doe' where a plaintiff does not know the actual name of a defendant prior to discovery may be acceptable, so long as the complaint contains sufficient factual allegations as to that defendant to state a plausible claim." *Langford*, 62 F.4th at 126. Lastly, district courts must consider whether the specific factual allegations give Defendants "fair notice … of the plaintiff's claim and the underlying factual support." *Langford*, 62 F.4th at 125.

The Court, generously construing the Amended Complaint under the Rule 12(b)(6) standard of review, finds that Plaintiff has alleged with sufficient specificity that the Defendants violated his constitutional rights. Plaintiff alleges that six uniformed deputies waited for him outside the holding cell before three of the deputies grabbed him and shoved him into the unmonitored room. *See* Doc. No. 29 at ¶¶ 21, 23, 24. The Court may plausibly infer the identities of these deputies from the six police officers named as Defendants (not including the seventh Defendant, Sheriff Campbell). *See* Doc. No. 29. Further, Plaintiff specifically alleges how these Defendants injured him: He asserts that each of the Defendants was present and/or participated in the assault and subsequent decision to restrain him in a chair with an open head wound and without proper medical attention. *Id.* at ¶¶ 26-31. Thus, the Court will view the use of group pleading as "a calculated decision to accuse all named parties." *Burgess v. Balt. Police Dep't.*, No. RDB-15-

6

0834, 2016 WL 795975, at *10 (D. Md. Mar. 1, 2020); *see also* Doc. No. 37 at 6-7. Further, unlike in *Langford*, where the Plaintiff "did not identify who the Defendants are beyond being employees at [the jail], in what capacity each Defendant interacted with [Plaintiff], or how (or even if) each Defendant was responsible for [Plaintiff's] medical treatment," the Plaintiff in this case asserted the names of individual Defendants and generally alleged their involvement in the claimed beating. Although "[t]he Amended Complaint does not assert which Defendants threw which punches[,] … it does permit the reasonable inference that these Defendants are liable for the alleged misconduct." *Dixon v. City of St. Albans*, No. 2:20-cv-379, 2020 WL 6702037, at *4 (S.D.W. Va. Nov. 13, 2020) (quoting *Iqbal*, 556 U.S. at 678).[4]

To be clear, the Court believes that it is a close call whether Plaintiff has adequately described his claims against the individual Defendants, and the Court only finds that Plaintiff has "plausibly" alleged enough specific factual allegations such that Defendants have adequate notice at this stage. *See Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009) ("When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." (citing *Lyons v. City of Xenia*, 417 F.3d 565, 582 (6th Cir. 2005) (Sutton, J., concurring))). As this matter moves forward, Plaintiff will be required to develop more specific evidence through discovery to support his claims. Also, the Court notes that the applicable rules of civil procedure provide each of the individual Defendants with opportunities to promptly seek dismissal based on a claim of non-involvement in the alleged assault through a motion for

---

[4] The Court also finds it highly likely that Defendants received notice of the original Complaint because Sheriff Campbell and his attorney, who also now represents the other Defendants, would have needed to investigate what merit Plaintiff's claims might have and it would be nearly impossible to do so without speaking to the Defendants.

7

judgment on the pleadings or summary judgment). Thus, this order represents only the first procedural step in this litigation and not any indication of the ultimate merits of Plaintiff's claims.

With respect to the second prong of the qualified immunity analysis, Defendants do not contest that the allegations, if true, would violate Bailey's clearly established constitutional rights. However, the Court will review that issue briefly for the sake of a complete record. A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Where, as here, a plaintiff alleges an officer used excessive force, the relevant constitutional right is the Fourth Amendment's prohibition against unreasonable seizures. *See Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Conduct does not amount to excessive force if it is "objectively reasonable" under the circumstances. *Id.* at 101 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Taking the factual allegations as true, the Court finds it is not objectively reasonable to pull a prisoner out of a holding cell, drag him to an unmonitored room, and assault him without any indication that the individual in custody was posing a threat to the safety of the officers, or others, or resisted transfer to the unmonitored room. Were this not enough, Defendants bear the burden of proof for this prong of the qualified immunity test and so their failure to address it weighs in favor of finding it satisfied. *See Jones v. Solomon*, 90 F.4th 198, 207 (4th Cir. 2024). Thus, Plaintiff has satisfied the second prong of the qualified immunity test.

In short, Plaintiff has sufficiently alleged that the Defendants violated his constitutional rights and that his Fourth Amendment right against excessive force was clearly established under these facts. His claims therefore are not barred by qualified immunity at this stage of the proceedings.

B.  **Public Official Immunity**

Defendants next contend that as public officials, they are entitled to public official immunity on Plaintiff's state tort law claims for negligence, gross negligence, negligent infliction of emotional distress, assault and battery, and intentional/reckless infliction of emotional distress. Plaintiff responds that public official immunity does not apply to claims of intentional torts and that the malice exception to public official immunity allows the state law claims to move forward.

Under North Carolina law, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Smith v. State*, 222 S.E.2d 412, 430 (N.C. 1976) (quoting *Smith v. Hefner*, 222 S.E.2d 783, 787 (N.C. 1952)). This immunity "precludes suits against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" *Hart v. Brienza*, 784 S.E.2d 211, 216 (N.C. Ct. App. 2016) (quoting *Smith*, 222 S.E.2d at 430 (alterations adopted)). This immunity protects public officials in the "honest exercise of [their] judgment within [the official's] jurisdiction, however erroneous or misguided [their] judgment may be." *Templeton v. Beard*, 74 S.E. 735, 736 (1912). Police officers performing their duties are public officials for the purpose of public official immunity. *See Bartley v. City of High Point*, 846 S.E.2d 750, 754 (N.C. Ct. App. 2020).

Public official immunity traditionally gives way where the public official's actions were "(1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Wilcox v. City of Asheville*, 730 S.E.2d 226, 288 (N.C. Ct. App. 2012). North Carolina courts have also expanded the list of exceptions to include bad faith and willful and deliberate conduct. *See Doe v. Putney*,

9

No. 3:18-cv-00586-RJC-DSC, 2022 WL 3335774, at *12 (W.D.N.C. Aug. 12, 2022) (quoting *Smith v. Jackson City Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005)); *see also Epps v. Duke University, Inc.*, 468 S.E.2d 846, 851 (N.C. Ct. App. 1996) ("The exceptions to official immunity have expanded over the years, with bad faith and willful and deliberate conduct now operating as additional common law bases for liability." (citing *Reid v. Roberts*, 435 S.E.2d 116, 119 (N.C. Ct. App. 1993), *disc. review denied*, 439 S.E.2d 151 (1993))). Here, Plaintiff primarily argues that the Defendants acted with malice. *See* Doc. No. 29 at ¶¶ 11, 88, 99; Doc No. 37 at 9.

A "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 321 S.E.2d 888, 890 (N.C. 1984). Thus, malice has three elements: it is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Wilcox*, 730 S.E.2d at 230. "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Bartley v. City of High Point*, 873 S.E.2d 525, 534 (N.C. 2022) (quoting *Yancey v. Lea*, 550 S.E.2d 155, 157 (N.C. 2001)). "Gross violations of generally accepted [] practice and custom" may lead to a finding that the public official acted contrary to their duty. *Id.* (citing *Prior v Pruett*, 550 S.E.2d 166, 174 (N.C. 2001)). As for the final element, "[t]he intent to injure can either be 'actual' or 'constructive.'" *Knibbs v. Momphard*, 30 F.4th 200, 227 (4th Cir. 2022) (quoting *Wilcox*, 730 S.E.2d at 231). Because "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' … evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'" *R.A. v. Johnson*, 36 F.4th 537, 545 (4th Cir. 2022) (quoting *Knibbs*, 30 F.4th at 227).

Police officers act with malice if they "use[] unnecessary or excessive force to effect [an] arrest." *Bartley v. City of High Point*, 846 S.E.2d 750, 754 (N.C. Ct. App. 2020). For instance, "using a body slam maneuver to subdue an unarmed, nonresistant individual who posed no threat to [the officer] is evidence of malice." *Bartley*, 873 S.E.2d at 535. Similarly, Courts have found that plaintiffs sufficiently allege malice where they claim that prior to their assault, "[the plaintiff] had not been combative, or otherwise violent toward the officers" and had been "handcuffed, possessed no weapon, and did not try to flee." *See Layden v. Stanley*, No. 4:22-CV-61-FL, 2023 WL 3733903, at *4 (E.D.N.C. May 30, 2023).

Here, Plaintiff alleged that he was intentionally taken out of a video camera-monitored holding cell and brought into an unmonitored room by the Defendants where he was assaulted. *See* Doc. No. 29 at ¶¶ 20-25. He claims that he did not make any aggressive movements or even attempt to protect himself when he was moved to the unmonitored room. *Id.* at ¶ 22. Following the alleged assault, Bailey asserts that he "stood dazed and bleeding in the hallway of the Iredell County Jail, plainly injured, pleading with Defendants to explain why they assaulted him." *Id.* at ¶ 25. According to the Complaint, Bailey was then strapped to a chair and left there for two hours as he bled from his headwound. *Id.* at ¶¶ 26-30. He received no medical attention during this time. *Id.* at ¶ 30. The alleged assault and subsequent decision to leave Plaintiff restrained and without medical care shows not only reckless indifference to his rights, but also an act contrary to the Defendants' duty as he was in their custody and needed medical care.

Although the parties disagree whether public official immunity applies to intentional torts, the Court need not reach this issue. *See* Doc. No. 37 at 8-9, Doc. No. 38 at 10-11. At this stage, Bailey need only plausibly allege that the Defendants acted with malice while committing the alleged torts to pierce public official immunity. Even if public official immunity were to apply to

11

the intentional tort claims, the Court finds that Bailey has met his burden to show the Defendants plausibly acted with malice and so the state law claims against him will proceed past the Defendants' motion.

### C. Punitive Damages

Defendants also ask the Court to dismiss Plaintiff's claims for punitive damages under North Carolina law against the Defendants in their individual capacities.[5] Plaintiff responds that these claims are not subject to dismissal because the allegations in the Complaint pierce public official immunity.

North Carolina law permits courts to award punitive damages "in an appropriate case and subject to the provisions of this Chapter, to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1. In this case, punitive damages may be awarded if Plaintiff proves (1) the Defendants are liable for compensatory damages and (2) the injury which creates that compensatory liability was accompanied by an aggravating factor, such as fraud, malice, or willful or wanton conduct. *See* § 1D-15(a). The presence of the aggravating factor must be proven by clear and convincing evidence. § 1D-15(b). Although a complaint must be specific enough to give defendants notice of the claims again them, a complaint "need not lay out all the 'detailed and specific facts giving rise to punitive damages.'" *Estate of Long by and through Long v. Fowler*, 861 S.E.2d 686, 697 (N.C. 2021) (quoting *Henry v. Deen*, 310 S.E.2d 326, 333 (N.C. 1984)).

As discussed above, the Court finds that Plaintiff has plausibly alleged malice and willful and wanton conduct as a justification for punitive damages. *See* Doc. No. 29 at ⁋ 101. Thus, at this

---

[5] In the parties' joint stipulation of partial dismissal, the parties agreed to dismiss Plaintiff's claim for punitive damages against Sheriff Campbell. *See* Doc. No. 36. Thus, the decision in this section only applies to the other Defendants.

12

stage, Plaintiff has sufficiently met his burden and the Court will deny the motion to dismiss Plaintiff's punitive damages claims.

### D. Statute of Limitations

Defendants' final argument is that the Court should dismiss Plaintiff's claims against all but Sheriff Campbell under the statute of limitations. Plaintiff does not contest that a three-year statute of limitations applies, but asserts that the allegations in the Amended Complaint relate back to the date of the original complaint under Rule 15(c).

#### 1. Limitations Period

There is a three-year statute of limitations in North Carolina for all of Plaintiff's state law claims. *See* N.C. Gen. Stat. §§ 1-52(5), (19). The limitations period beings to accrue on the initial date of injury. *See Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 7 (N.C. Ct. App. 2012) (citation omitted). For § 1983 claims, the Court applies "the statute of limitations for personal injuries of the state in which the alleged violation occurred." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Because § 1-52 covers personal injury claims, the Court will therefore apply a three-year statute of limitations to the § 1983 claim.

Here, the alleged assault took place on March 27, 2019, and so the limitations period expired on March 27, 2022. The Amended Complaint was filed on June 15, 2023. Thus, the statute of limitations bars the claims against the Defendants unless it "relates back" to the original, timely complaint under Rule 15(c).

#### 2. Relation Back

An amended complaint "relates back" to the date of the original pleading when:

> the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if

13

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(B)-(C). Accordingly

> an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading if (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant "but for a mistake concerning the identity of the proper party.

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007). Defendants do not appear to dispute (nor could they) that the claims in the Amended Complaint arise out of the same transaction that formed the basis of the original Complaint. *See* Doc. No. 35 at 21-22. Instead, they argue that lack of knowledge about the Defendants' identity is not considered a "mistake concerning identity" under Rule 15(c)(3) and so Plaintiff cannot satisfy its requirements. *Id.* Plaintiff contends that his initial lack of knowledge of the identities of the John Doe Defendants does not bar his claims and that Defendants received sufficient notice within the limitations period so as not to be prejudiced. *See* Doc. No. 37 at 10-15.

First, to determine the limitations period of "notice," the Court looks at "whether the newly added defendant received notice and should have had knowledge of the action" within Federal Rule of Civil Procedure 4(m)'s service period. *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010). The service period is 90 days after the complaint is filed, or longer if good cause is shown.

14

Fed. R. Civ. P. 4(m). Thus, if Defendants had notice of the suit within 90 days of the complaint being filed, they received adequate notice.

Here, Plaintiff's initial complaint was filed on March 25, 2022. *See* Doc. No. 1-2. Sheriff Campbell was served on April 5, 2022, just under two weeks into the service period. *See* Doc. No. 1-7. Defendants almost certainly received adequate notice in the following weeks. In North Carolina, "deputy sheriffs are the alter ego of the sheriff generally, for whose conduct he is liable." *Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997). In the original Complaint, Defendants Doe 1-7, for whom the names of the Defendants are substituted in the amended complaint, were identified as "deputies with the Sheriff's Office and an agent and employee of the Sheriff and the Sheriff's office." *Id.* at ¶ 3. They were further identified as "Sheriff's deputies of the Sheriff's Office involved in the physical assault of Plaintiff." *Id.* Given that level of specificity and the fact that sheriffs are responsible for the conduct of deputy sheriffs, the Defendants were identified and given informal notice at that time. *See Western Contracting Corp. v. Bechtel Corp.*, 885 F.3d 1196, 1201 (4th Cir. 1989) ("Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." (citing *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1258 (11th Cir. 1986)). Moreover, as discussed above it is highly likely that the Defendants were informed of the suit in order to help Sheriff Campbell's attorney, who then became their attorney, investigate whether the case had any merit. Thus, the Court finds that the Defendants received adequate notice, satisfying the first requirement under Rule 15(c).

As for the requirement that a mistake concerning the proper party's identity precluded their inclusion in the original complaint, the Court finds that Plaintiff satisfies that requirement. Rule 15(c)'s "mistake" language is not the vehicle to address "Doe substitutions." *Goodman*, 494 F.3d

15

Case 5:22-cv-00052-KDB-SCR   Document 43   Filed 02/07/24   Page 15 of 16

at 473. Those are "adequately police[d]" by the notice and lack of undue prejudice requirements of Rule 15, which, as explained above, are satisfied. *Id.* Simply stated, "a plaintiff may substitute a named defendant for a John Doe defendant provided that the plaintiff does so in accordance with Rule 15(c)(1)(C)'s notice and knowledge requirements." *Rumble v. 2nd Ave Value Stores*, 442 F. Supp. 3d 909, 916 (E.D. Va. 2020) (discussing the holding in *Goodman v. Praxair, Inc.*).

In sum, Plaintiff has met the requirements of Rule 15(c) and the amended complaint therefore relates back to the original complaint and is not barred by the statute of limitations.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 34) is **DENIED;**

2. This case shall **proceed toward a decision on the merits** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED.**

Signed February 7, 2024

Kenneth D. Bell
United States District Judge